

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2000

# Pearson v. Miller, et al.

Precedential or Non-Precedential:

Docket 99-7047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Pearson v. Miller, et al." (2000). *2000 Decisions.* Paper 85.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/85

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 26, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 99-7047

JACQUELINE PEARSON, Individually and
as Parent & Natural Guardian of Lindsay Pearson

v.

BRUCE MILLER; LUZERNE COUNTY CHILDREN &
YOUTH SERVICES, INC.

LUZERNE COUNTY CHILDREN &
YOUTH SERVICES, INC.,
Defendant/Third-Party Plaintiff

v.

KIDSPEACE NATIONAL CENTERS FOR KIDS
IN CRISIS, INC.,
Third Party Defendant

Luzerne County Children & Youth
Services, Inc.; KidsPeace National
Centers for Kids in Crisis, Inc.,
        Appellants

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 97-764)
District Judge: Honorable Yvette Kane

Argued September 22, 1999

Before: BECKER, Chief Judge, and GARTH, Circuit Judge,
and POLLAK, District Judge.*

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

(Filed April 26, 2000)

Chester F. Dudick, Jr., Esq.
 (Argued)
Dudick & Decker, P.C.
1043 Wyoming Avenue
Forty Fort, PA 18704

Richard M. Hughes, III, Esq.
387 Wyoming Avenue
Kingston, PA 18704

 Counsel for Appellee

Bruce Miller #CY-4190
Luzerne County Prison
99 Water Street
Wilkes-Barre, PA 18702

 Pro Se Appellee

Barbara O'Connell, Esq. (Argued)
Sweeney & Sheehan
1515 Market Street, 19th Floor
Philadelphia, PA 19102

 Counsel for Appellant Luzerne
County Children & Youth Services,
Inc.

Richard F. Stevens, Esq.
Timothy T. Stevens, Esq. (Argued)
Stevens & Johnson
740 Hamilton Mall
Allentown, PA 18101

 Counsel for Appellant KidsPeace
National Center for Kids in Crisis,
Inc.

2

OPINION OF THE COURT

POLLAK, District Judge.

This is an interlocutory appeal1 from a discovery order of the United States District Court for the Middle District of Pennsylvania in a suit presenting claims arising under 42 U.S.C. S 1983, to which are annexed a variety of pendent state law claims. The order appealed from granted--subject to certain restrictions--plaintiff/appellee Jacqueline Pearson's motions to compel discovery. In the same order, the District Court denied, to the same extent, motions of defendants/appellants Luzerne County Children and Youth Services, Inc. (LCCYS) and KidsPeace National Centers for Kids in Crisis, Inc. (KidsPeace) which sought protective orders authorizing LCCYS and KidsPeace to refrain from providing plaintiff with the information sought under plaintiff 's motion to compel.

The information at the center of the present discovery dispute is information in the possession of LCCYS and KidsPeace concerning defendant Bruce Miller, who was a foster child under the supervision of LCCYS and KidsPeace in December of 1993, when he sexually assaulted Ms. Pearson's daughter. Ms. Pearson seeks to establish that the defendant agencies had knowledge of Mr. Miller's violent sexual propensities sufficient to establish their liability for the assault. Ms. Pearson thus seeks discovery of material that might evidence such knowledge. LCCYS and KidsPeace have resisted plaintiff 's discovery requests on the grounds that such discovery would violate the confidentiality of that information in breach of an array of Pennsylvania statutes.

Primarily on the basis of an "Authorization to Release Information" signed by Mr. Miller, the District Court rejected the argument of LCCYS and KidsPeace that the Pennsylvania statutes barred the sought after discovery. The court held that, subject to certain restrictions

_____

1. Because interlocutory appeals are not normally permitted, a discussion of the basis of our appellate jurisdiction is necessary. We undertake that discussion in Section II, infra .

necessary to protect other people's interests, Mr. Miller's release was sufficient to waive the bulk of the protections afforded by the Pennsylvania statutes. The District Court thus fashioned an order that compelled discovery of all material sought except to the extent that such material contained information the release of which would violate the rights of third parties protected by the Pennsylvania statutes, as those statutes were interpreted by the District Court.

Because, however, discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the state statutory confidentiality provisions that have been invoked by appellants--and on the basis of which the District Court fashioned its order--do not directly govern the present dispute. Only to the extent that federal law may recognize the force of those provisions are they relevant here. The ultimate issue is whether the discovery sought is permitted as a matter of federal law.

Acknowledging the applicability of federal law, appellants contend that the state confidentiality provisions ought to be recognized under the federal law of evidentiary privileges. We are thus directed to the question whether the applicability of the federal law governing discovery disputes bars the release of the demanded information either--as appellants have chiefly argued--because federal law recognizes one or more applicable evidentiary privileges, or because federal law otherwise provides for the protection of the information here in dispute.

For the reasons discussed below, we reject appellants' argument that the disputed material is protected by a federal evidentiary privilege. While we accept that appellants may have very legitimate concerns regarding the confidentiality of the information sought, we believe that those concerns are better addressed in the context of the District Court's power to impose reasonable limits on the discovery of sensitive information pursuant to Federal Rule of Civil Procedure 26(c). To enable the District Court to fashion the appropriate accommodation of the competing interests, we will vacate the order appealed from and

remand for further proceedings consistent with this opinion.

I.

The facts relevant to the resolution of the issue before this court are largely undisputed. Plaintiff Jacqueline Pearson––appellee in this court––brought this action on her own behalf and as parent of her daughter Lindsay Pearson. Ms. Pearson alleges, and appellants do not contest, that defendant Bruce Miller abducted and sexually assaulted twelve-year-old Lindsay on December 19, 1993. Mr. Miller was, at the time of the assault and for the previous ten months, living in a foster home in Luzerne County, Pennsylvania. He was under the custody and supervision of LCCYS, a county government agency, as he had been for the previous several years. Mr. Miller was placed in the particular foster home in which he lived by KidsPeace, a private organization under contract with LCCYS to provide services to LCCYS's clients. Beyond this general characterization, it is unclear how Mr. Miller's supervision was divided between the two organizations.

Following the attack, a criminal rape charge was brought against Mr. Miller. He pled nolo contendere to the charge, and was sentenced to five to ten years in prison. As far as we are aware, he is currently serving that sentence.

Ms. Pearson initiated the present action against Mr. Miller and appellant LCCYS in December of 1995 in the Court of Common Pleas for Luzerne County, Pennsylvania. Thereafter, LCCYS removed the case to the United States District Court for the Middle District of Pennsylvania. LCCYS then brought in appellant KidsPeace as a third-party defendant. Ms. Pearson then amended her complaint to assert claims against both agencies.

Ms. Pearson's primary cause of action against appellants is a S 1983 claim alleging that they are liable for the consequences of a "state-created danger." In particular, appellee Pearson alleges that appellants knew Mr. Miller to have had violent sexual propensities that made him a predictable danger to young girls. In light of this knowledge, appellee contends that Mr. Miller "should not have been

5

allowed access to young girls such as he gained by his foster care placement, by being permitted to attend public school, and by being allowed to ride a school bus on his own." In addition to her S 1983 claim, appellee's second amended complaint includes federal equal protection and common law negligence and invasion of privacy claims against appellants, as well as a prayer for punitive damages. On July 10, 1998, the District Court dismissed with prejudice, as against LCCYS only, Ms. Pearson's state law claims, as well as all claims for punitive damages. Thus, appellee's remaining claims against LCCYS are limited to federal ones; as against KidsPeace, on the other hand, the above-noted state law claims remain in the case together with the federal claims.

During the discovery period, Ms. Pearson filed notices of deposition directed to both appellants announcing an intention to depose "all case managers and their supervisors who had responsibility for the management and supervision of Bruce Miller for the five (5) years prior to December 17, 1993." Soon thereafter, plaintiff served interrogatories on LCCYS and KidsPeace that included requests for information which--so both appellants contend --would require the release of sensitive confidential information contained in their respective files on Bruce Miller. In order to avoid that perceived outcome, KidsPeace and LCCYS filed motions for protective orders seeking protection from each of these requests. Appellee responded by filing a motion to compel discovery of the disputed material.

After appellants had filed their motions for protective orders, but prior to the filing of the motion to compel, Ms. Pearson's attorneys obtained an "Authorization to Release Records" signed by Bruce Miller. Mr. Miller had, by that time, reached majority, and was acting as his own attorney. The text of that document is as follows:

> I, BRUCE MILLER, hereby authorize Luzerne County Children and Youth Services and/or KidsPeace National Centers for Kids in Crisis, Inc. to release my entire file, including, but not limited to, any and all evaluations, memoranda, correspondence, personal data, recommendations and requests to Chester

6

Dudick, Jr. Esquire and Richard M. Hughes, III, Esquire.

Appellants sought protection from discovery on the basis of the confidentiality provisions contained in three statutes:

The first statute, the Child Protective Services Law (CPSL), 23 Pa. Cons. Stat. S 6301 et seq., mandates that the confidentiality of reports of child abuse made pursuant to that law be preserved. It provides that such reports are to be made available only to a limited number of persons, among whom are the subject of any report and a guardian ad litem of the child.2

_____

2. The arguably relevant exceptions to the general rule of confidentiality are contained in 23 Pa. Cons. Stat. Ann. S 6340:

(a) General rule.--Reports specified in sectio n 6339 (relating to confidentiality of reports) shall only be made available to:

     . . . .

     (3) A guardian ad litem or court designated advoca te for the child.

     . . . .

     (5) A court of competent jurisdiction, 8 pursuant to court order or subpoena in a criminal matter involving a charge of child abuse . . . .

     (5.1) A court of common pleas in connection with any matter involving custody of a child. . . .

     . . . .

     (b) Release of information to subject of report.--At any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed pursuant to section 6313 (relating to reporting procedure).

     (c) Protecting identity of person making report.--Except for reports pursuant to subsection (a)(9) and (10), the release of data that would identify the person who made a report of suspected child abuse or the person who cooperated in a subsequent investigation

is prohibited unless the secretary finds that the release will not be

detrimental to the safety of that person. Law enforcement officials shall treat all reporting sources as confidential sources.

7

The second statute, the Juvenile Act, 42 Pa. Cons. Stat. S 6501 et seq., restricts access to "files and records of the court" related to proceedings under the Act, which include custody disputes, delinquency proceedings, et cetera. Such files are to be kept confidential, except that certain excepted persons, including parties "and their counsel and representatives" are permitted to view the documents contained therein. Even those granted access by an exception to the general confidentiality rule, however, "shall not be permitted to see reports revealing the names of confidential sources of information contained in social reports, except at the discretion of the court." 42 Pa. Cons. Stat. S 6307(2).

The third statute invoked by appellants is the Mental Health Procedures Act (MHPA), 50 Pa. Cons. Stat.S 7101 et seq. That statute directs that "[a]ll documents concerning persons in treatment shall be kept confidential." 50 Pa. Cons. Stat. Ann. S 7111(a).3 Such documents may be released only by the consent of the subject, or in other limited circumstances.4

_____

3. In pertinent part, the MHPA provides that:

> (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
> (1) those engaged in providing treatment for the p erson;
>
> (2) the county administrator, pursuant to section 110;
>
> (3) a court in the course of legal proceedings aut horized by this act; and
>
> (4) pursuant to Federal rules, statutes and regula tions governing disclosure of patient information where treatment is undertaken in a Federal agency.
>
> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.

50 Pa. C.S.A. S 7111.
4. Appellants also sought protection under the County Youth Services Law, 55 Pa. Code S 3130 et seq., a regulation that governs county youth services agencies, such as LCCYS. The law contains, inter alia, requirements that such agencies maintain the confidentiality of their records. Because these requirements are broadly similar to those contained in the CPSL, we will, for the most part, restrict our discussion to the three statutes noted above.

The District Court rejected the appellants' contention that these statutes together created a comprehensive shield protecting most, if not all, of the information held by the two organizations concerning Mr. Miller. The court did so on the basis of its view that the release signed by Mr. Miller was sufficient to waive the bulk of the confidentiality protections contemplated by the statutes. The District Court accepted that the statutes--including the confidentiality provisions therein--were, in the first instance, applicable to the dispute at hand, but held that Mr. Miller had effectively waived his interests in protection, thus allowing the bulk of the material to be turned over, subject to limited restrictions primarily aimed at the protection of other people whose privacy interests might be compromised by the unhindered release of the information.5

II.

Before we turn to the merits of this discovery dispute, we are faced with the issue of appellate jurisdiction. The District Court had original federal question jurisdiction of this case pursuant to 28 U.S.C. S 1331. This case comes to this court, however, as an interlocutory appeal of a discovery order. "As a general rule, a district court's order enforcing a discovery request is not a `final order' subject to appellate review." Church of Scientology v. United States,

_____

5. The District Court imposed the following restrictions:

    a. In accordance with section 6307(2) of the Juvenile Act, 42 Pa. Cons. Stat. S 6303-6365 (1982 & Supp. 1998), neither Mr. Miller nor his counsel or representative may see any courtfiles or records of Juvenile Act proceedings which contain the names of confidential sources of information.

    b. Pursuant to 55 Pa. Code S 3680.35(b)(5), defendants shall redact the names and other identifying information of individuals other than Mr. Miller, when the disclosure of such information would violate the legitimate privacy expectations of any individual other than Mr. Miller.

    c. It is further ordered that plaintiff shall maintain as confidential
    all documents received from defendants.

Pearson v. Miller, No. 97-764 (M.D. Pa. Dec. 14, 1998).

9

506 U.S. 9, 18 n.11 (1992). This court has jurisdiction over this appeal, therefore, only if it fits within one of the exceptions to that general rule. Because we find that the present case fits within the collateral order doctrine--the exception to the final order rule which the Supreme Court fashioned in Cohen v. Beneficial Indus. Loan Corp. 337 U.S. 541(1949)--we hold that we properly have jurisdiction over the appeal. This court has interpreted the Cohen test as follows:

> An appeal of a nonfinal order will lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from the judgment.

In re Ford Motor Co., 110 F.3d 954, 958 (3d Cir. 1997).

In Ford, this court held that an appeal from a denial of the application of the attorney-client privilege was reviewable under the collateral order doctrine. See Ford, 110 F.3d at 964. For similar reasons, we find that each of the requirements of the test is met in the present case. An order denying the applicability of a claimed privilege conclusively determines the question, and does so in a way that is effectively unreviewable: once released, information has lost a measure of confidentiality that can never fully be regained. See id. at 963. Further, it is clear that resolution of the present issue in this forum--which concerns only the scope of state or federal privileges--would not require the court to delve into the substance of the underlying dispute --which concerns appellants' knowledge of Mr. Miller's violent sexual proclivities--in any apparent way. And it is beyond dispute that the issue in the present action is an important one. Cf. Jaffee v. Redmond, 518 U.S. 1, 8 (1996) (granting certiorari on the question whether federal law recognizes a psychotherapist-patient privilege, in part because of "the importance of the question"). Thus, the order appealed from "resolves an important issue that is completely separate from the merits of the dispute." Ford, 110 F.3d at 958.

Having found that each of the requirements of the

10

collateral order exception to the final order doctrine obtains, we now turn to the merits of the discovery dispute.6

III.

The general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26, which provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible. Rule 26(c) grants federal judges the discretion to issue protective orders that impose restrictions on the extent and manner of discovery where necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Rule 26 thus allows for two approaches to seeking the protection of sensitive--but relevant--information, like that at issue here. A party seeking to protect the confidentiality of such information may argue, as appellants have here, that the information is protected by an evidentiary privilege. Any material covered by a properly asserted privilege would necessarily be protected from discovery, pursuant to Rule 26(b)(1). Where such a privilege is not available, a party may petition the court for a protective order that limits

_____

6. Because the order appealed from concerns claims of privilege, our conclusion that, pursuant to the collateral order doctrine, we have appellate jurisdiction to review that order is in harmony with our decision just a few days ago in Bacher v. Allstate Insurance Company, No. 99-1572 (April 20, 2000). In Bacher we dismissed an appeal from a discovery order requiring a defendant insurance carrier to disclose amounts paid in settlement of other assertedly similar lawsuits. We there held that, "[i]n light of Cunningham[v. Hamilton County, 119 S.Ct. 1915 (1999)] and Digital Equipment [v. Desktop Direct, Inc., 511 U.S. 863 (1994)] and the approach taken by other courts of appeals we determine that we should not extend our case law beyond the narrow categories of trade secrets and traditionally recognized privileges, such as attorney-client and work product."

11

discovery in accordance with Rule 26(c). The court, in its discretion, is authorized by this subsection to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests--including privacy and other confidentiality interests--that might be harmed by the release of the material sought.

Appellants, in this court, have primarily pursued the approach of seeking the protection of an evidentiary privilege. Thus, while acknowledging that the District Court erred in applying state law directly, they argue that, as a matter of federal law, the concerns captured by the Commonwealth's confidentiality statutes ought to be reflected in federal recognition of an evidentiary privilege that would allow appellants to properly resist all, or nearly all, of the discovery attempted by appellee. We therefore turn first to appellants' claim that the material sought is protected by an evidentiary privilege under federal law.

a.

All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501, which provides:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Thus, federal courts are to apply federal law of privilege to all elements of claims except those "as to which State law supplies the rule of decision." In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law. The present case, however, presents the complexity of having both federal and

12

state law claims in the same action.7 The problems associated with the application of two separate privilege rules in the same case are readily apparent, especially where, as here, the evidence in dispute is apparently relevant to both the state and the federal claims. This court has resolved this potential conflict in favor of federal privilege law. Noting that "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable," we held that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." Wm. T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982).8 Accordingly, for the resolution of the present discovery dispute, which concerns material relevant to both federal and state claims, Rule 501 directs us to apply federal privilege law.

Federal privilege law, as conceived by Rule 501, is determined by "the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." No decisions of this court have, as a matter of federal common law, recognized privileges of the sort contemplated by the CPSL, the Juvenile Act, or the MHPA. And so far as we have been able to determine, none of our sister circuits has recognized cognate privileges as a matter of federal common law. Thus, appellants are effectively requesting that we recognize quite novel privileges as part of the federal common law.9

_____

7. As discussed above, both federal and state claims remain in the case against KidsPeace, while each of the remaining claims against LCCYS is federal.

8. Here, as in Thompson, the disputed discovery material is relevant to both the state and federal claims. We thus need not reach the question of whether material that went only to the state claims would be controlled by federal law simply because distinct federal claims had also been raised. But see Doe v. Special Investigations Agency, Inc., 779 F. Supp. 21 (E.D. Pa. 1991) (holding that federal law governs all privilege questions in cases in which a federal claim has been raised, without regard to whether the privilege sought would protect information relevant to the federal claims).

9. It should be noted that one district court has recognized a privilege of the kind here sought. That court adopted a Rule 501 privilege protecting

The federal approach to the recognition of new privileges is characterized by two principal features. First,"Rule 501 `should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship . . . should be determined on a case-by-case basis.' " Jaffee v. Redmond, 518 U.S. 1, 9 (1996) (recognizing a psychotherapist-patient privilege under Rule 501). "Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to `provide the courts with the flexibility to develop rules of privilege on a case-by-case basis,' 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate), and to leave the door open to change." Trammel v. United States, 445 U.S. 40, 47 (1980); see also In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997). The general test to be applied in assessing privilege candidates is whether such a privilege "promotes sufficiently important interests to outweigh the need for probative evidence." Trammel, 445 U.S. at 51; Jaffee, 518 U.S. at 9-10.

The other principal feature of the federal approach is that the considerations against the recognition of new privileges that would impede access to probative evidence are granted very significant weight. " `For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional.' " Jaffee, 518 U.S. at 9 (quoting 8 J. Wigmore, Evidence

_____

the confidentiality of child abuse reports whose confidentiality is protected by Tennessee's analog to the CPSL. See Farley v. Farley, 952 F. Supp. 1232 (M.D. Tenn. 1997) ("This Court has little difficulty in concluding the T.C.A. SS 37-1-409 and 37-1-612 establish an evidentiary privilege that is entitled to deference under the principles of federalism and comity that are an implicit component of Rule 501.").

On the other hand, a district court in this circuit has expressly rejected the privilege here sought under the Juvenile Act. See Longenbach v. McGonigle, 750 F. Supp. 178, 180 (E.D. Pa. 1990) ("We know of no common law federal privilege against disclosing juvenile records.").

14

S 2192, p. 64 (3d ed. 1940)). This court has recently stated that "privileges are disfavored." In re Grand Jury, 103 F.3d at 1149 (rejecting parent-child privilege); see also Nixon, 418 U.S. at 710 (cautioning that privileges "are not lightly created nor expansively construed"). Thus, with very limited exceptions, federal courts have generally declined to grant requests for new privileges. See, e.g. , University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990) (declining to adopt academic peer-review privilege); In re Sealed Case, 148 F.3d 1073 (D.C. Cir.) (declining to adopt "protective function" privilege requested by the Secret Service), cert. denied, Rubin v. United States, 119 S. Ct. 461 (1998); Carman v. McDonnell Douglas Corp., 114 F.3d 790, 794 (8th Cir. 1997) (rejecting a corporate ombudsman privilege and stating that "[t]he creation of a wholly new evidentiary privilege is a big step"); Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("Federal courts have never recognized an insured-insurer privilege as such."); EEOC v. Illinois Dept. of Employment Sec., 995 F.2d 106 (7th Cir. 1993) (rejecting Rule 501 privilege for records of unemployment hearings); United States v. Holmes, 594 F.2d 1167 (8th Cir. 1979) (declining to recognize probation officer privilege). Thus, federal courts are to assess the appropriateness of new privileges as they arise in particular cases, but they are to conduct that assessment with a recognition that only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence.

The case for recognizing a particular federal privilege is stronger, however, where the information sought is protected by a state privilege. "[T]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." Jaffee, 518 U.S. at 12-13."A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976); see also Memorial Hosp. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981); Lora v. Board of Educ., 74 F.R.D. 565 (E.D.N.Y. 1977); Johnson v. City of Philadelphia, 1994 WL 612785, at *10 (E.D. Pa.

15

Nov. 7, 1994). Thus, a federal court "may seefit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." Riley v. City of Chester, 612 F.2d 708, 715 (3d Cir. 1979) (quoting D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 471 (1942)) (emphasis omitted).

The appropriateness of deference to a state's law of privilege is diminished, however, in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege. "[T]here is a `special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." ACLU v. Finch, 638 F.2d 1336, 1344 (5th Cir. 1981); see also Longenbach, 750 F. Supp. at 180–81 ("Nor does it make any sense to allow the state, under whose color of authority officers have allegedly violated rights, to limit unilaterally the availability of evidence.").10

Appellants have urged that the appropriate level of respect due to state law in the present case requires that the Pennsylvania privileges be recognized as a matter of federal law. A necessary predicate of appellants' favored outcome, of course, is that Pennsylvania in fact recognizes evidentiary privileges associated with the statutes in question. As an initial matter, however, it is not clear that the statutes in question create evidentiary privileges at all. Indeed, neither the CPSL nor the Juvenile Act contains the word "privilege."11 The relevant provisions contained therein speak primarily of confidentiality, not privilege. On their face, therefore, these statutes do not appear to establish evidentiary privileges constituting a bar to the discovery of

_____

10. This concern is especially strong where, as here, a government agency asserting the privilege is itself a defendant (as distinct from being
the employer of a defendant governmental official).

11. The MHPA, on the other hand, does use the word "privilege." However, the language containing that word does not, on its face, create a privilege. Following the statute's language mandating confidentiality, it
refers to "privileged communications," but does so in a way that suggests that the privilege must be defined elsewhere:"In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent." 50 Pa. St.S 7111(a).

16

relevant information. Statutory provisions providing for duties of confidentiality do not automatically imply the creation of evidentiary privileges binding on courts. "Merely asserting that a state statute declares that the records in question are `confidential' does not make out a sufficient claim that the records are `privileged' within the meaning of Fed. R. Civ. P. 26(b)(1) and Fed R. Evid. 501." Martin v. Lamb, 122 F.R.D. 143, 146 (W.D.N.Y. 1988); see also Nguyen Da Yen v. Kissinger, 528 F.2d 1194, 1205 (9th Cir. 1975) ("The records are confidential but not privileged.").

It does not follow, however, that a statute providing for a duty of confidentiality––but lacking an express provision for an evidentiary privilege, per se––could not also be interpreted as creating such a privilege. Indeed, Pennsylvania courts have described each of the statutes here at issue as creating an evidentiary privilege of one kind or another. See Commonwealth v. Moyer, 595 A.2d 1177, 1180 (Pa. Super. Ct. 1991) ("[T]hefirst sentence of [section 7111 of the MHPA] confers a statutory privilege of confidentiality on the patient's records."); 12 V.B.T. v. Family Servs., 705 A.2d 1325, 1334 (Pa. Super. Ct. 1998) (noting that the CPSL creates a privilege, albeit one that is "not absolute and disclosure of otherwise confidential information is therefore permitted where compelled by sufficiently weighty interests") (citing Commonwealth v. Ritchie, 502 A.2d 148 (Pa. 1985), rev'd on other grounds, 480 U.S. 39 (1987)); id. at 1331 ("[T]he privilege created by the Juvenile Act is qualified, i.e., creates, by its own terms, exceptions to the confidentiality of juvenile court records.").

To be sure, what these opinions have characterized as "privileges" are not necessarily privileges within the meaning of Rule 501. It is clear, however, that the Commonwealth does recognize a series of rights, variously defined, to withhold relevant evidence from judicial proceedings on the basis of the confidentiality provisions

_____

12. This court, following Moyer, has reached a similar conclusion with respect to Pennsylvania law. See Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 465 (3d Cir. 1996) (stating that the MHPA"presents an absolute confidentiality privilege against the disclosure of documents that `concern[ ] persons in treatment' ").

contained in the Pennsylvania statutes. Considerations of comity require that we at least consider these "privileges," as well as the confidentiality interests otherwise protected under the laws of the Commonwealth, although our ultimate task remains the determination of the issue of whether privileges associated with these statutes and the confidentiality that they seek to protect are cognizable under Federal Rule of Evidence 501.[13]

In sum, we must determine whether to recognize a federal privilege that would allow the evidence here sought to be kept from appellee, notwithstanding its relevance. We are, in essence, to determine whether there are federal law privileges that amount to parallels of the state law privileges that appellants have argued would bar the discovery here sought, had the present suit been brought in the courts of the Commonwealth of Pennsylvania. Thus, we are to determine, granting due respect to Pennsylvania's protections, whether a privilege of the kind sought by appellants "promotes sufficiently important interests to outweigh the need for probative evidence," Trammel, 445 U.S. at 5, where the need for probative evidence is viewed as a very weighty consideration indeed--to the extent that only the strongest considerations on the other side of the scale are capable of outweighing it.

b.

With that framework in place, we turn to the particular privileges sought by appellants. As we discuss below, we will decline to recognize any of the privileges under which appellants have sought protection from discovery. Because of the particular circumstances of this case, in which Mr.

_____

13. This approach is consistent with that employed in Jaffee. The Court there based its decision to recognize a psychotherapist-patient privilege in part on the fact that all fifty states had done so. And while the majority of the statutes cited in support of this proposition expressly create such a privilege, not all of them do so. For example, the Rhode Island statute cited, R.I. Gen. Laws. SS 5-37.3-3 and -4, speaks only of confidentiality. Like the statutes at issue here, however, the Rhode Island statute has been interpreted by its courts as creating a privilege. See Lewis v. Roderick, 617 A.2d 119, 121 (R.I. 1992).

18

Miller has waived assertion of his confidentiality interests, in order for appellants to be protected by such a privilege, it would have to be a privilege of a very unusual sort--one whose breadth and scope would appear to make it particularly unsuited for recognition within the framework of Rule 501. This conclusion is only strengthened by our view, discussed in the next section, that a far more appropriate mechanism exists for protecting the legitimate interests at stake: namely, a Rule 26(c) protective order. In light of the disfavor with which federal law looks upon new privileges, these considerations are sufficient to provide a basis for the rejection of appellants' proposed privileges.

Because Mr. Miller has effectively waived his confidentiality interests, appellants have been forced to invoke privileges directed entirely at interests other than those of Mr. Miller.14 Thus, the question presented is not whether there are evidentiary privileges protecting Mr. Miller's interests under Rule 501, but whether federal law is to recognize one or more privileges directed at the interests of third parties whose interests may be affected by the release of the information here in dispute. Because the primary interests at stake--Mr. Miller's--have been taken off of the table, the privileges sought by the appellants must necessarily focus on the secondary interests at stake.

Once our inquiry is confined to the consideration of potential privileges characterized in that way, it is clear that appellants' requested privileges must be rejected. We consider first appellants' invocation of the Mental Health Procedures Act. It is settled under Pennsylvania law that the MHPA gives rise to "an absolute confidentiality privilege" covering documents related to the treatment of mental health problems. Hahnemann, 74 F.3d at 465; see also Moyer, 595 A.2d at 1180. That privilege, however, is held by the patient, who is permitted to waive it and to

_____

14. Appellants have suggested that the validity of the waiver signed by Mr. Miller is in question. They point to nothing in the record, however, that casts even the smallest amount of doubt on its authenticity. We find, therefore, as a matter of law, that Mr. Miller has waived his rights in the confidentiality of the materials here sought to the extent permitted
by law.

19

allow the protected information to be released. See Sprague v. Walter, 656 A.2d 890, 910-911 (Pa. Super. Ct. 1995) (finding the MHPA privilege to have been waived by former patient who had allowed records to become publicly available). It follows that any privilege that would spring from the MHPA in the present case would necessarily have been waived by Mr. Miller's release.

Notably, federal law does recognize a privilege that would seem to overlap the privilege under the MHPA: the psychotherapist privilege. See Jaffee, 518 U.S. at 15. Again, like that associated with the MHPA, the federal psychotherapist privilege is owned by--and fully waivable by--the patient. See id. at 15 n.14. Thus, any such privilege could not provide the basis for the protection here sought, because if such a privilege did protect any of the information at issue, Mr. Miller would be deemed to have effectively waived that protection.

The privileges associated with the Child Protective Services Law and Juvenile Act are not so readily dismissible. For with respect to those statutes, protecting third-party interests is undoubtedly an important ingredient of the confidentiality provisions. The CPSL's confidentiality provision, for instance, is directed at the confidentiality interests not only of the child, but also of those who file child abuse reports, of those who work with the child, and, perhaps, of the state agencies themselves.15

_____

15. The Pennsylvania Superior Court has stated that:

> The confidentiality provisions of the CPSL have several clear
> functions in light of the statute's broad purposes: to encourage
> reporting of abuse by ensuring that persons with knowledge of
> abuse are not deterred from reporting it by the prospect of the
> abuser learning their identity and seeking retribution; to
facilitate
> the investigation of abuse by assuring potential witnesses that the
> information they provide to investigators will not be made public;
to
> facilitate the rehabilitation and treatment of abused children and
> their families by encouraging open, frank communications with
> agency personnel and treatment providers; to encourage the
effective
> operation of the child protective service by enabling it to keep
> complete and comprehensive files on all aspects of a family's
> circumstances without fear that information placed in such files
will

20

There is little question that many of these interests are of very substantial weight. Indeed, it is difficult to overstate the importance of a state's activities directed at the welfare of children. And the prevention and detection of child abuse are among the most compelling of these activities. The need to protect the confidence of the children involved in these programs and proceedings is crucial to their maximal effectiveness. Additionally, the importance of protecting those who file child abuse reports is clear. It is essential that people be encouraged to make such reports, and confidentiality is a valuable tool to that end."Recognizing this, the Commonwealth--like all other States--has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure." Ritchie, 480 U.S. at 60-61; see also Farley, 952 F. Supp. at 1240 ("Without question, the investigation and resolution of incidents of child abuse is one of the most important regulatory objectives that a state may undertake.").

Thus, in addition to the interests of the child, it is evident that a large number of persons have significant interests in maintaining the confidentiality of the kinds of records here sought. If we were to recognize a privilege that protected all of the interests at which the confidentiality provisions of the Pennsylvania statutes are directed, Mr. Miller's waiver would not be adequate to waive the privilege in its entirety.

However, the same factor that would allow these privileges to survive Mr. Miller's waiver--the number and variety of interests that appellants would have us hold to be a basis for such privileges--makes them poor candidates for the protection of a Rule 501 privilege. Initially, we note that such a privilege would be unlike any currently recognized Rule 501 privilege. As a general matter,

_____

be subject to scrutiny by persons not involved in the process of rehabilitating the family; and to prevent the innocent victims of abuse from also becoming victims of public stigma by guarding information about the intimate details of their lives from the prying eyes of outsiders.

V.B.T., 705 A.2d 1325, 1335-36.

21

privileges are ordinarily found in bilateral confidential relations: attorney-client, husband-wife, clergy-communicator, reporter-source, government-informer. And, of course, the privilege most recently recognized by the Supreme Court, the psychotherapist-patient privilege recognized in Jaffee, fits this standard schema.

There is good reason for favoring relatively uncomplicated confidential relationships in assessing candidates for the application of evidentiary privileges as contemplated by Rule 501. Complex multilateral privileges such as the ones here sought would necessarily be extremely broad and unwieldy to enforce. We might, for instance, recognize such a privilege held by all of those with significant interests in confidentiality. Presumably, however, it would follow that the privilege could not be waived without the consent of all the potentially vast number of "holders" of the privilege. Such a privilege would essentially be unwaivable. Indeed, it is far from clear that such a protection would appropriately be labeled a "privilege," in the sense employed in Rule 501, at all. Cf. Jaffee, 518 U.S. at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the protection.").

We might, on the other hand, view such a privilege as held by the state on behalf of all of those who have interests in confidentiality under the statutes. While such a solution would have certain practical advantages over the "privilege" just described, it would remain a poor fit for the framework of Rule 501. First of all, by placing the power to assert or waive the privilege in the hands of the government, the value of the privilege in promoting unhindered communication would be undermined. Because those who would benefit from the privilege would lack the power to control its application, they would be less able to rely on its protection when deciding whether to provide sensitive information. "An uncertain privilege . . . is little better than no privilege at all." Jaffee, 518 U.S. at 18 (quoting Upjohn v. United States, 449 U.S. 383, 393 (1981)); see also In re Grand Jury, 103 F.3d at 1153-54 (noting the problems that would be created in allowing a parent to assert or waive a privilege created to protect the interests of a child). To the extent that the value of a privilege is thus

weakened, it is that much less able to overcome the value of promoting the availability of probative evidence. 16

Furthermore, the variety--both in kind and in magnitude --of the interests at stake calls for a more flexible approach than that possible with a Rule 501 privilege. For such a privilege would effectively grant to the state--or, more precisely, to a congeries of state and municipal agencies-- the power to withhold, or make available, an entire class of documents regardless of the particular complexities of the case. The resolution of discovery disputes of the sort presented in the case at bar would be best served by an approach that allowed the potentially wide variety of interests at stake to be incorporated into a solution balancing the need to protect sensitive information with the need to make relevant material available. Because the interests on both sides have the potential to be so very significant, it is especially important to define the scope of the release of information very carefully. And it seems unreasonable to expect that a government agency, in the midst of litigation, would be best placed to determine whether and to what extent sensitive information should be released. In short, a Rule 501 evidentiary privilege held by the government would be an unacceptably imprecise tool for the protection of a broad and varied landscape of interests. And given the fact that, as we discuss in the next subsection, a more precise and better located tool is available for that purpose, there is little reason to adopt such a problematic device.

_____

16. We note that while separation of the privilege holder from the interested party substantially undermines the value of the privilege, such a separation is not always fatal to a privilege's recognition. The informer's privilege, for instance, is designed in large part to protect the
privacy interests of the informer. It is held, however, by the government, which may freely waive it notwithstanding the desires of the informer. See Roviaro v. United States, 353 U.S. 53, 59 (1957) ("What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."). Once the government reveals the identity of the informer, the privilege is waived. Id. at 60. Because of the inherent difficulties with such bifurcated privileges, however, they are very rare indeed.

23

In sum, we find that Rule 501 is unsuited for the kind of privilege that appellants have requested: one that maintains its protection despite the express waiver of the primary holder of interests in confidentiality. Given the caution with which federal courts are to approach all questions of novel privileges, we have little trouble rejecting any such privilege.

c.

Our rejection of appellants' requested privilege under Federal Rule of Evidence 501 should not be taken to amount to a determination that the unhindered release of the information here in dispute is appropriate. On the contrary, district courts have the power, under Federal Rule of Civil Procedure 26(c), to issue protective orders constraining—in any of a variety of ways—the release of sensitive information. Given the potential weight of the considerations in favor of confidentiality of the information here in dispute, the present case is a good candidate for a thorough and conscientious assessment of the various considerations for and against confidentiality.

Rule 26(c) empowers the court to issue protective orders "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Legitimate interests in privacy are among the proper subjects of this provision's protection."It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994). Such an order is only appropriate, however, where the party seeking the order "show[s] good cause by demonstrating a particular need for protection." Id. To make a showing of good cause, the party seeking confidentiality has the burden of showing the injury "with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). The injury shown, however, need be no more than "embarrassment"; thus, a party need not establish a monetizable injury. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). Further, in appropriate circumstances, a district court is empowered to

24

issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection. See id. at 1122.

Rule 26(c) further provides that such orders may be crafted to create any of a broad range of requirements, including

> (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; [and] (5) that discovery be conducted with no one present except persons designated by the court . . . .

Thus, Rule 26(c) provides district courts with the power to formulate a detailed solution that reflects the concerns of particular individual disputes. To that extent, it provides a superior mechanism for the resolution of the present dispute than does Federal Rule of Evidence 501.

The District Court order appealed from in this case contains some restrictions of the kind authorized by Rule 26(c). In particular, the District Court ordered that certain identifying characteristics be redacted from certainfiles, that certain files not be viewed by plaintiff 's attorneys, and that all documents received by plaintiff be kept confidential. See supra, note 5. It is clear from the language of that order, however, that it represents an attempt to permit discovery to the extent possible consistent with the District Court's view of the restrictions created by the Pennsylvania statutes.17 A more apt approach to the resolution of this dispute would focus less on the letter of the Pennsylvania statutes than on an accommodation of plaintiff 's legitimate discovery interests with the legitimate interests of third

_____

17. One of the three restrictions imposed by the District Court begins, "In accordance with section 6307(2) of the Juvenile Act," and another purports to be imposed "[p]ursuant to 55 Pa. Code S 3680.35(b)(5)." See supra, note 5.

25

parties in the confidentiality of portions of the requested material.

The flexibility of Rule 26 also allows the court to take into account the particular needs of the parties at the present stage of litigation, a consideration that we view as appropriate in this case. We note that the needs of appellant at this stage are relatively modest. As counsel for Ms. Pearson acknowledged at oral argument, her attorneys are simply interested in developing her case, and would not object to an order that, for instance, prevented anyone other than counsel from viewing or learning the contents of any of the material sought. Such a restriction seems entirely sensible at this point, since any restrictions that would (a) further legitimate interests in confidentiality, but (b) would not interfere with appellee's needs at this early stage, would be appropriate. Indeed, in view of the considerable significance of the interests in confidentiality here at stake, it would appear proper for the District Court to permit no greater release of the information sought by appellee than is absolutely necessary for the particular purposes for which it is sought. The parties may later seek to modify the order as appropriate at a later stage. See Pansy, 23 F.3d at 784 ("It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered.").

Accordingly, we reject appellants' request for the federal recognition of one or more evidentiary privileges derived from the Pennsylvania confidentiality provisions under which appellants have sought protection from discovery. We will vacate the order of the District Court, however, for reconsideration of the present discovery dispute in the light of this opinion. Because the District Court placed conditions upon discovery pursuant to inapplicable Pennsylvania law, we will direct the District Court to modify its discovery order to remove any conditions that were imposed solely to conform to state law. At that time, the District Court should entertain requests for protective orders under Federal Rule of Civil Procedure 26(c) and impose such restrictions upon discovery as it deems appropriate.

26

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit