**Alfred MARTIN, Plaintiff,**

**v.**

**Herbert W. LAMB and Kenneth Coniglio, Police Officers, City of Rochester Police Department, Defendants.**

**No. Civ. 87–0227T.**

United States District Court,
W.D. New York, C.D.

Sept. 28, 1988.

144

Alfred Martin, Rochester, N.Y., pro se.

Louis N. Kash, Corp. Counsel (Maureen A. Byrne, of counsel), Rochester, N.Y., for defendants.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate.

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that on February 24, 1987, defendants arrested him without justification, and also injured him during the course of making the arrest. Furthermore, plaintiff claims that defendants conspired to arrest him illegally, injure him, and deprive him of his civil and constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment. Plaintiff is seeking compen-satory and punitive damages as well as a declaratory judgment that his arrest was illegal.

On August 25, 1988, plaintiff filed a motion requesting official reports or records pertaining to the use of force, brutality, abusiveness, excessive force, or any misconduct, by either defendant while performing their official duties as police officers. In particular, the plaintiff requested the following information:

(1) Where each defendant is employed;

(2) How long each defendant has been employed;

(3) Whether the defendants work in a particular area or section of the city;

(4) Whether there have ever been any departmental actions or investigations against either defendant;

(5) Whether any complaints have been filed against either defendant for brutality, abusiveness, or use of excessive force;

(6) Whether either defendant has ever been suspended or reprimanded by the Rochester Police Department;

(7) The internal affairs reports on defendant officers;

(8) Whether the City of Rochester had ever paid, or settled any claims or losses for defendants.

Attached to plaintiff's motion was a transcript of proceedings in Rochester City Court in a criminal action entitled *People v. Alfred Martin,* in which City Court Judge William H. Bristol recused himself on the ground that he could not "listen to Officer Lamb fairly." The transcript also reveals that defendants' police personnel files were viewed by City Court *in camera* upon the consent of the City Corporation Counsel, Mark Davison. Defendants submitted an affidavit in opposition to plaintiff's motion claiming that the records in question are privileged material protected from disclosure by § 50–a of the New York Civil Rights Law. Affidavit of Maureen A. Byrne, at ¶ 4–6. In addition, defendants object to discovery of the documents on the ground that the records sought are irrelevant to the instant action on the theory of

Rule 404(b) of the Federal Rules of Evidence, which provides that "evidence of prior bad acts is not admissible to show a character trait from which one could infer that a similar act took place." Affidavit of Maureen A. Byrne, at ¶ 7. Furthermore, defendants request that, should the court review the personnel files *in camera*, it limit the release order to information which would be admissible in evidence upon a trial of the cause. Affidavit of Maureen A. Byrne, at ¶ 8. Finally, defendants contend that they cannot respond to the request for information regarding previous payment or settlement of any claims or lawsuits against officers Lamb and Coniglio because the Corporation Counsel's office is unable to retrieve this information unless plaintiff can provide the exact title of any previous lawsuits. Affidavit of Maureen A. Byrne, at ¶ 9. Defendants do not explain why they cannot simply ask defendants for this information, nor do they aver whether an attempt to search for this information using defendants' names was made or turned up the requested information.

This matter has been referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A).

## DISCUSSION

The basic principles applicable to this discovery dispute were set forth in my recent decision in *Van Emrik v. Chemung County Department of Social Services*, 121 F.R.D. 22 (W.D.N.Y.1988). They bear repeating here. Whether the subject file may be discovered is, in general, governed by Fed.R.Civ.P. 26(b)(1) which provides that "[p]arties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action, ..., including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identification and location of persons having knowledge of a discoverable matter." (emphasis supplied). The question of privilege, in turn, is governed by Rule 501 of the Federal Rules of Evidence and, with respect to an action in which the complaint alleges a federal claim (here under 42 U.S.C. § 1983), Rule

501 directs the court to the federal common law of privilege. The circuit courts have "consistently held" that, in cases involving a federal claim, federal (not state) law applies. *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.1987), *cert. denied sub nom., Reynolds v. Von Bulow*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061–62 (7th Cir.1981) (per curiam); *Breed v. United States District Court*, 542 F.2d 1114, 1115 (9th Cir.1976) (§ 1983 action); *Kaufman v. Edelstein*, 539 F.2d 811, 818 (2d Cir.1976); *Colton v. United States*, 306 F.2d 633, 636 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *In re Albert Lindley Lee Memorial Hospital*, 209 F.2d 122, 123 (2d Cir.1953), *cert. denied sub nom., Cincotta v. United States*, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954).

Accordingly, defendants' nearly exclusive reliance on N.Y.Civil Rights Law § 50–a is misplaced in this § 1983 action, and that state statute does not determine the parameters of the "privilege" invoked by defendants in this case. On the other hand, principles of federalism and comity, which direct a federal judge to the properly restrained role of the court in the federal system, require consideration of the formulation of a privilege or confidentiality rule under state law. *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d at 144; *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d at 1061. Moreover, a close functional scrutiny of the state interests embodied in its rule of privilege or confidentiality and any countervailing federal interests implicated in the case should be undertaken to ensure vindication of the paramount federal interest with as minimal intrusion on the state interests as is consistent with federal claims. *Matter of International Horizons, Inc.*, 689 F.2d 996, 1004 (11th Cir.1982); *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1343 (5th Cir.1981); *Lora v. Board of Education of the State of New York*, 74 F.R.D. 565, 576 (E.D.N.Y.1977); *United*

*States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976).

█ It is not entirely clear, however, whether the New York Legislature, by its enactment of § 50–a, intended to create an evidentiary "privilege" within the meaning of the law of evidence. A non-disclosure or "confidentiality" provision in a statute may not always create an evidentiary privilege, especially if the legislature did not "explicitly create an evidentiary privilege." *American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d at 1342. Merely asserting that a state statute declares that the records in question are "confidential" does not make out a sufficient claim that the records are "privileged" within the meaning of Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 501. *See Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1205 (9th Cir.1975) (state adoption records statute limiting disclosure); *Zucker v. Sable,* 72 F.R.D. 1, 4 (S.D.N.Y.1975) ("even if it were confidential" the information is "not necessarily outside the scope of Rule 26[b][1]"); *Luey v. Sterling Drug, Inc.,* 240 F.Supp. 632, 636 (W.D.Mich.1965) ("confidential materials are not thereby excluded").

There is substantial evidence that the New York Legislature did not, when it enacted § 50–a, intend to create an evidentiary privilege in the conventional sense of a "protect[ion] from forced disclosure on the witness stand." *Black's Law Dictionary* 1078 (5th ed. 1979). As made clear by the New York Court of Appeals, "the legislative intent underlying the enactment of Civil Rights Law § 50–a was *narrowly specific,* 'to prevent time-consuming and perhaps vexatious investigation into *irrelevant collateral* matters in the contest of a civil or criminal action'" *Matter of Capital Newspapers v. Burns,* 67 N.Y.2d 562, 569, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986) (quoting, *id.* 109 A.D.2d 92, 96, 490 N.Y.S.2d 651 [3rd Dept.1985]) (emphasis supplied). The primary purpose of the legislature was to prevent embarassment and harassment of testifying officers by cross-examination concerning "unsubstantiated and irrelevant complaints" against them and to prevent *"unrestricted* examination of their personnel records" in civil actions for the purpose of lessening "their vulnerability to harassment or reprisals." *Id.* 67 N.Y.2d at 568, 505 N.Y.S.2d 576, 496 N.E. 2d 665 (quoting *Carpenter v. City of Plattsburgh,* 66 N.Y.2d 791, 497 N.Y.S.2d 909, 488 N.E.2d 839 [1985], *affirming for reasons stated at,* 105 A.D.2d 295, 298, 484 N.Y.S.2d 284 [3rd Dept.1985]), 568–69 (quoting Senator Marino's sponsoring memorandum, reprinted in 1981 N.Y.Legis.Ann., at 419). Section 50–a was not intended to restrict access to information plainly relevant to a criminal or civil action. *See People v. Gissendanner,* 48 N.Y.2d 543, 551, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979) ("if ... the records contain matter that is relevant and material in that action, such portions may be disclosed ..."). These authoritative interpretations of section 50–a by New York's highest court, when considered with the unambiguous statutory language itself, provides compelling evidence that the legislature did not create a "privilege" and, indeed, sought to ensure that relevant portions of police personnel files be disclosed for appropriate use in a civil action.

Although the federal courts have sometimes treated N.Y.Civil Rights Law § 50–a as embodying a state law privilege, *Hayden v. Maldonado,* 110 F.R.D. 157, 159 (N.D.N.Y.1986); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 126–27 (N.D.N.Y. 1984), Judge Weinstein's recent opinion in *King v. Conde,* 121 F.R.D. 180 (E.D.N.Y. 1988) (available on WESTLAW DCT DATABASE, 1988 WL 72647) properly suggests that section 50–a "is not really a privilege in the sense that it could justify complete refusal to disclose relevant evidence." *Id.* 121 F.R.D. at 191–192. As Judge Weinstein observed, "as long as a record is relevant, it must be disclosed to the plaintiff ... [because] [t]he sole function of section 50–a is ... to protect irrelevant materials from disclosure: to prevent fishing expeditions, not to safeguard privacy itself." *Id.* 121 F.R.D. at 192.

Because the New York Legislature did not create a privilege, and because "there is no federal analog to New York Civil Rights Law § 50–a," (*id.* 121 F.R.D. at 187), the only limitation on disclosure in this action is the relevancy criterion of Fed. R.Civ.P. 26(b)(1). On the other hand, there is no reason why, if § 50–a was specifically designed as a device to ferret out relevant materials for disclosure in litigation, a federal court should not give effect to the state created procedures for determining relevancy. While certain details of the procedure may conflict with the paramount federal interest of full disclosure of Rule 26(b)(1) material, *see* e.g., N.Y.Civil Rights Law § 50–a (2) (requiring a preliminary showing by plaintiff of the existence of relevant material in the file); *id.* (subdiv. 3) (disclosure warranted on a finding that material is both "relevant *and material*") (emphasis supplied), a federal court may easily modify the state statutory procedure

for the purpose of giving effect to the full disclosure requirement of Fed.R.Civ.P. 26(b)(1) without doing violence to the proper concerns of federalism and comity raised by the enactment of the state confidentiality statute. Otherwise, there is every reason to give full force and effect to the state created procedures for determining relevancy which the New York Legislature thought important to safeguard defendants' interests.

Accordingly, defendants are hereby directed to submit to me, *in camera*, the files in question together with an itemization of the contents thereof identifying which materials are conceded to be "relevant" within the meaning of Fed.R.Civ.P. 26(b)(1), which are contended to be relevant but non-material within the meaning of N.Y.Civil Rights Law § 50–a, and which are contended to be collateral or not relevant within the meaning of Fed.R.Civ.P. 26(b)(1).* On the issue of relevance, de-

---

* I therefore disagree with Judge Weinstein's conclusion that Magistrate David Jordan erred in applying N.Y.Civil Rights Law § 50–a by requiring submission of police personnel records *in camera* to determine relevancy prior to the making by defendants of a "substantial threshold showing." *King v. Conde*, 121 F.R.D. at 189. Under the state statutory scheme, relevant materials should be ordered disclosed, and a determination whether other collateral matters in the file should be "privileged" under the elaborate balancing test proposed by Chief Judge Weinstein is unnecessary because collateral, irrelevant materials need not be divulged under Fed. R.Civ.P. 26(b)(1). Chief Judge Weinstein's balancing test, and his proposed requirement of a "threshold showing [which] must explain the reasons for non-disclosure with particularity," *King v. Conde*, 121 F.R.D. at 189, should only apply to a particular document in the file which the court finds "relevant" within the meaning of Fed.R.Civ.P. 26(b)(1) and N.Y.Civil Rights Law § 50–a(3), but not "material" within the meaning of § 50–a(3). While it may be debatable whether this combination of circumstances will often occur in a particular case, and while it would be extremely helpful to the Magistrate to have the benefit of *in camera* submissions from defendants' counsel identifying what portions of the files are contended to be (A) relevant, (B) relevant but non-material, and (C) wholly collateral, together with an argument addressed to the balancing factors outlined in Judge Weinstein's opinion applicable to any relevant but non-material matter, there is no reason to require in every case an elaborate affidavit from the police officer involved or the custodian of records except in the hardest and rare cases

involving an identified and closely competing interest in disclosure on the one hand and continued privacy on the other. In the ordinary case, the disclosure determination rests almost exclusively on the concept of relevancy, and the defendants' attorney is peculiarly suited to make contentions with respect to any particular document directed to that legal issue, not the "responsible official within the agency" contemplated by Chief Judge Weinstein. Mechanistic application in every case of the procedures outlined in *King v. Conde, supra,* would engender a waste of attorney, police agency, and judicial resources in all but the unusual cases, and would fail to place sufficient reliance in a judge's or magistrate's ability to flexibly manage discovery in § 1983 actions consistent with the properly invoked federal and state concerns implicated in each case.

Application of the procedures outlined in *King v. Conde, supra,* would also displace settled discovery rules allocating the various burdens of production and proof when motions arise. Chief Judge Weinstein's procedural scheme would have the defendants who resist discovery of the file make their objection to the other party prior to any court intervention in an elaborate affidavit of a responsible police agency official. This is not required by Fed.R.Civ.P. 34(b) (requiring a simple statement of the "reasons for objection"). As stated in 8 Wright & Miller, *Federal Practice and Procedure* § 2207 (1970), "[i]f the request is objected to, it is for the discovering party to decide whether to pursue the matter further" (*id.* at 613), and a fuller explanation of the reasons for and against dis-

fendants should be guided by *Hayden v. Maldonado,* 110 F.R.D. at 160; *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. at 128; *Renshaw v. Ravert,* 82 F.R.D. 361, 363 (E.D.Pa.1979). Should any of the materials be considered by defendants relevant but non-material within the meaning of N.Y. Civil Rights Law § 50–a, defendants should endeavor to make the showing contemplated in *King v. Conde, supra,* addressing themselves to the balancing factors outlined in that opinion. Upon my *in camera* review, an ultimate determination will be made as to each item and an order shall issue consistent therewith.

### CONCLUSION

Plaintiff's motion for a court order or subpoena for an *in camera* review of the service records of defendant police officers is hereby granted as indicated herein.

The foregoing constitutes the Decision and Order pursuant to 28 U.S.C. § 636(b)(1)(A). The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 37(a)(2), this order shall be final unless within ten (10) days after being served with a copy thereof a party files with the Clerk and serves upon opposing counsel a written appeal specifying the party's objections and the manner in which it is claimed that this order is clearly erroneous or contrary to law.

SO ORDERED.

closure may await the subsequent motion to compel. *Id.* at 613–14. ("On that motion the court will consider the reasons why inspection was objected to ..."). Although parties would be well advised to discuss the entire factual and legal reasoning for non-disclosure as part of their mandatory Local Rule 17 efforts to resolve the dispute, "the burden is on the objector to satisfy *the court* that discovery should not be had" (*id.* § 2214, at 644) (emphasis supplied), not to make a threshold showing to the party's adversary by submission of an evidentiary affidavit. The burden under Fed.R.Civ.P. 34(b), rather, is to completely identify each document objected to with a statement of reason (*id.* § 2213, at 641), not to prove the elements necessary to establish the merits of that reason as would be necessary on the subsequent motion to compel. *See* 4A *Moore's Federal Practice* ¶ 34.05[2] (2d ed. 1982)

On the other hand, some substantial showing must be made when a party resists a motion to compel. Indeed, a party seeking *in camera* review as part of its effort to justify non-disclosure must accompany the request for such review with a complete explication, related to each document, of the privilege asserted. *Kerr v. United States District Court,* 426 U.S. 394, 404–06, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976); *Breed v. United States District Court,* 542 F.2d 1114, 1115–16 (9th Cir.1976). As in *Kerr* and *Breed,* defendants in this case are being given the opportunity, when they submit the files *in camera,* to "assert the privilege more specifically ..., and then have their request for an *in camera* review of the materials ... reconsidered in a different light." *Kerr v. United States District Court,* 426 U.S. at 404, 96 S.Ct. at 2125.