David K. MARTIN, Plaintiff,

v.

Christopher CONNER, et al., Defendants.

Civil No. WDQ–11–881.

United States District Court,
D. Maryland.

Nov. 14, 2012.

Seth A. Rosenthal, Joeann E. Walker, Venable LLP, Washington, DC, for Plaintiff.

Nichole C. Gatewood, Maryland Office of the Attorney General, Phillip Michael Pickus, Maryland Department of State Police, Pikesville, MD, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

SUSAN K. GAUVEY, United States Magistrate Judge.

This is a civil rights suit in which plaintiff claims that two Maryland State troopers stopped, detained and searched him and his automobile without reasonable suspicion or probable cause and based on his race or color and further claims that their filing of certain handgun charges against him was abuse of process and malicious prosecution. Pending before the Court is plaintiff's motion to compel the Maryland State Police (MSP) to produce documents relating to complaints which

allege that defendants, Sgt. Christopher Conner and Trooper Jeremiah Gussoni, illegally stopped and searched motorists besides plaintiff and which may implicate their veracity. Alternatively, plaintiff asks the Court to review the subpoenaed documents *in camera* to determine whether they should be disclosed. (ECF No. 31). Briefing is complete and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the Court will GRANT Martin's Motion to Compel. The documents shall be produced with appropriate redactions under a protective order that limits the documents' release to plaintiff and his attorney as described below, by **November 28, 2012.**

## I. Facts as Alleged

Plaintiff is an African–American man who resides in Philadelphia, Pennsylvania. (ECF No. 1, 2). On October 12, 2009, defendant Jeremiah Gussoni, a Maryland State Trooper [1], stopped plaintiff on Interstate 95 Southbound for speeding, making an unsafe lane change, following another vehicle too closely, and negligent driving. (ECF No. 1, 3). Defendant Gussoni requested plaintiff exit the car and proceeded to search him. (ECF No. 21, 2). After finding nothing on plaintiff, defendant Gussoni detained plaintiff and called for backup to assist with the search of his vehicle. (ECF No. 1, 3). Defendant Christopher Conner, another Maryland State Trooper, conducted a subsequent search of plaintiff after arriving on scene. (ECF No. 1, 3). Defendant Conner located a handgun in plaintiff's waistband that was legally purchased and registered in Pennsylvania. (ECF No. 1, 3–4). Plaintiff was arrested and charged under Maryland state law with unlawful possession of a firearm on his person and in the car. (ECF No. 1, 4). Plaintiff was issued a warning for his traffic offenses. (ECF No. 1, 4).

On November 2, 2009, plaintiff was pulled over on Interstate 95 Southbound by a Maryland State Trooper for speeding and making an unsafe lane change. (ECF No. 1, 4). After removing plaintiff and the passenger from the car and questioning them, plaintiff was released with a warning after no contraband was found. (ECF No. 1, 4).

Plaintiff later appeared at a hearing on December 9, 2012 at the Cecil County Circuit Court where the State of Maryland *nolle prossed* plaintiff's previous weapons charges. (ECF No. 1, 5). Defendant Gussoni asked the prosecutor to *nolle pross* the charges to provide him with more time to investigate the handgun with the Bureau of Alcohol, Tobacco, and Firearms (ATF). (ECF No. 14–7, 4). The ATF later informed defendant Gussoni that the purchaser of the weapon, Clinton Saines, was a suspected straw purchaser. (ECF No. 14–7, 4). In response, defendant Gussoni revived the previous *nolle prossed* charges and added a charge of gun trafficking. (ECF No. 1, 12–13). On August 13, 2010, plaintiff was acquitted of all charges. (ECF No. 1, 17).

On December 9 after the hearing, plaintiff was pulled over for speeding by defendant Conner. (ECF No. 1, 5). However, plaintiff had installed a device in his car that recorded his speed and allegedly showed that he had not exceeded the speed limit. (ECF No. 1, 5). Defendant Conner performed a pat-down search of plaintiff and found no contraband. After claiming to have smelled marijuana, defendant Conner, with another trooper, searched plaintiff's car and found no contraband. (ECF No. 1, 6). Plaintiff was released after twenty minutes with a written warning for speeding. (ECF No. 1, 6).

On April 5, 2011, plaintiff filed the complaint in this case against defendants Gussoni and Conner containing 13 causes of action, contending, *inter alia,* unconstitutional search and seizure and malicious prosecution.[2] (ECF No. 37, 9). On March 1, 2012,

---

1. Defendant Gussoni is currently employed as a Special Agent with the U.S. Department of Homeland Security. (ECF No. 33–1, 2).

2. Martin's claims were: Counts 1, 3, 5, and 7 through 10, violations of 42 U.S.C. § 1983 [unconstitutional search and seizure (Counts 1 and 5), deprivation of equal protection (Count 3),

unconstitutional seizure (Count 7), due process violation (Count 8), retaliatory prosecution (Count 9), conspiracy to deprive rights (Count 10) ], Counts 2 and 6, violations of article 26 of the Maryland Declaration of Rights (unconstitutional search and seizure), Count 4, violation of article 24 of the Maryland Declaration of Rights (discriminatory classification), Count 11, mali-

the court granted summary judgment to the defendants on counts 7–13, the counts related to his prosecution, but denied summary judgment on the remaining counts. (ECF No. 19, 1). The plaintiff moved for reconsideration of summary judgment on these counts, which motion was denied. (ECF No. 37, 23).

Plaintiff now seeks to compel non-party MSP to produce records in its possession. (ECF No. 31–1, 1). According to MSP, the records plaintiff seek pertain to "unfounded" complaints regarding "defendants' conduct during other stops and searches" as well as "unfounded" complaints about "defendants' veracity." (ECF No. 33–1, 3). MSP defines "unfounded" as "the investigation revealed that the reported incident did not occur." (ECF No. 33–1, 3). According to the plaintiff, the records (1) may reveal a pattern and practice of the police officers of illegally stopping and searching motorists; (2) may reveal prior instances of untruthfulness; and (3) may be relevant to punitive damages as they may underscore the egregiousness of defendants' conduct. (ECF No. 31, 1–2). MSP declined to produce the documents claiming that (1) the records are confidential under Maryland law and (2) this confidentiality should not be breached in this federal action, particularly because the complaints were unsustained and implicate the defendants' privacy. (ECF No. 33–1, 4, 6, 9–10). Each side's arguments will be discussed below.

## II. Analysis

 Under Federal Rule of Civil Procedure 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." There is no privilege for police investigative files under federal law. *Bellamy–Bey,* 237 F.R.D. 391, 393 (D.Md.2006). As stated by this Court in *Bellamy–Bey,* "[e]xcept for reasonable redactions of names and addresses to protect privacy or informer sources, plaintiffs in federal civil rights actions are presumptively entitled to documents on prior complaints and police history." *Id.* (citing *King,* 121 F.R.D. at 198). Courts have recognized that "[t]he strong public interest in § 1983 actions generally weighs heavily in favor of a full airing of the relevant evidence." *Martin A. Schwartz, Admissibility of Investigatory Reports in § 1983 Civil Rights Actions—A User's Manual,* 79 Marq. L.Rev. 453, 509 (1996).

Both parties correctly recognize that to determine whether plaintiff is entitled to production of the documents, this Court should conduct a balancing test articulated in the widely followed decision of Judge Weinstein in *King v. Conde,* 121 F.R.D. 180, 198 (E.D.N.Y.1988).[3] As the United States District Court for the Southern District of West Virginia acknowledged in *Manns v. Smith,* there are no Fourth Circuit cases that "discuss the official information privilege in detail in the context of § 1983 litigation." 181 F.R.D. 329, 330 (S.D.W.Va.1998). However, many federal courts within and without the Fourth Circuit have followed the framework of *King.*[4] *See e.g., Bellamy–Bey v. Baltimore*

---

cious prosecution, Count 12, abuse of process, and Count 13, common law and Maryland Declaration of Rights conspiracy. (ECF No. 37, 9, cited from (ECG No. 1, 17–30)).

3. Judge Weinstein is a noted commentator and scholar on federal evidence. He has stated in the respected "Weinstein on Federal Evidence" that government investigatory files should be made available "if there is no prospect of law enforcement proceedings in which the investigative material will be germane, or if the government's regulatory action has already been taken, or if the party seeking the information is not a party to any current or contemplated criminal enforcement action...." 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 509.24[2] at 528–9 (*Joseph M. McLaughlin, ed., Matthew Bender* 2d ed., 2d ed.1997). The Fourth Circuit and this Court has relied on WEINSTEIN'S FEDERAL EVIDENCE on numerous occasions. *See U.S. v. Offill,* 666 F.3d 168, 175 (4th Cir.2011); *U.S. v. Barile,* 286 F.3d 749, 759 (4th Cir.2002); *Fiberglass Insulators, Inc. v. Dupuy,* 856 F.2d 652, 654–55 (4th Cir.1988); *Goyal v. Thermage, Inc.,* Civil No. WDQ–08–0020, 2011 WL 4380657, at *7 (D.Md. Sept. 16, 2011) (Quarles, J.); *Lorraine v. Markel American Ins. Co.,* 241 F.R.D. 534, 542 (D.Md.2007) (Grimm, J.).

4. The *King* decision has, however, been criticized by a minority of courts. *See e.g., Martin v. Lamb,* 122 F.R.D. 143, 147 n. 1 (W.D.N.Y.1988) (declaring that "[m]echanistic application in every case of the procedures outlined in *King v. Conde, supra,* would engender a waste of attorney, police agency, and judicial resources in all but the usual cases...."). *See also Nguyen v. Jefferson Parish Sheriff's Dept.,* Civ. A. No. 91–2868, 1992 WL 91925, at *2 (E.D.La. April 16, 1992) (finding

*Police Dept.*, 237 F.R.D. 391, 393 (D.Md. 2006); *Wolfe v. Green*, 257 F.R.D. 109, 112 (S.D.W.Va.2009); *Johnson v. Phila.*, No. CIV. A. 94–1429, 1994 WL 612785, at *10 (E.D.Pa. Nov. 07, 1994); *El Badrawi v. Dept. of Homeland Sec.*, 258 F.R.D. 198, 203 (D.Conn.2009); *Scott v. Edinburg*, 101 F.Supp.2d 1017, 1020 (N.D.Ill.2000). *See also* Hon. Arlene Rosario Lindsay, Issues Arising Before Magistrate Judges in Section 1983 Litigation, 531 PLI/Lit, Oct. 1995 at 737 (citing *King* as one of the "leading" cases in the area of law enforcement privilege of non-public documents). Under *King*, to assert law enforcement privilege, police must first "make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials." *King*, 121 F.R.D. at 189 (internal quotations omitted). The test dictates that "[b]lanket and generalized assertion of privilege is not sufficient to overcome the presumption of discoverability." *Jonathan C. Moore, Discovery Issues in Police Conduct Litigation*, 622 PLI/Lit 127, Feb. 2000 at 144.

The Court finds that the MSP has made a substantial threshold showing of the specific harms through its Opposition to Plaintiff's Motion to Compel, requiring the Court to further analyze disclosure of the documents under *King*. (ECF No. 33–1). The Opposition to Plaintiff's Motion to Compel provides ample case law and sufficiently addresses, in the context of the factors in *King*, the potential harm if the documents were released. *Id.* Moreover, the strength of the Maryland law on the confidentiality of these records alone would counsel further analysis under *King*, in deference to state statutory and decisional law.

■ The balancing test in *King* "weighs whether 'disclosure of specific information would result in specific harm to identified

important interests' against the relevance of the documents to the plaintiff's case and the injury to the public and plaintiff of non-disclosure." *Bellamy–Bey*, 237 F.R.D. at 393 (citing *King*, 121 F.R.D. at 198).

Specific factors that favor disclosure are:
- The relevance of the documents to the plaintiff's case
- The importance of the documents to the plaintiff's case
- The strength of the plaintiff's case; and
- Importance to the public interest.

The factors that disfavor disclosure are:
- The threat to a police officer's own safety as a result of disclosure
- Invasion of a police officer's privacy
- Weakening of law enforcement programs
- Chilling of police candor during internal investigations
- Chilling of citizen candor during internal investigations; and
- The state's privacy laws

*King*, 121 F.R.D. at 191–95.

■ The Court addresses each factor, in turn, in the context of this case.

### *King* Factors That Favor Disclosure:

#### • The Relevance of the Documents to the Plaintiff's Case

The first factor is the relevance of the documents to the plaintiff's case. According to Judge Weinstein, "[t]his factor is at base a reminder of the fundamental policy that discovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence, should be accessible." *King*, 121 F.R.D. at 194. Plaintiff argues that the documents are rele-

---

that "*King* impose[s] an overlay of unreasonably burdensome procedural requisites to justify invoking the official information privilege" that "would render the privilege meaningless.").

Also, the Second Circuit, which ordinarily espouses *King*, in *In Re City of New York*, 607 F.3d 923, 928 (2d Cir.2010) cited the law enforcement privilege in denying a litigant's request for highly sensitive information about police undercover operations without mentioning *King*. However, *In Re City of New York*, a case involving national

security, is distinguishable from typical § 1983 actions regarding police misconduct. *See Floyd v. City of New York*, 739 F.Supp.2d 376, 384 (S.D.N.Y.2010) (applying *In Re City of New York* in a § 1983 action and finding that the balance in favor of and against disclosure "easily tips" to the plaintiff as the internal investigations regarding police quotas, which plaintiffs allege led to racial profiling, do not "implicate such vital concerns as terrorism, mass unrest or riots, spiraling violence or chaos, or anything of the like.")

vant because they involve prior allegations that defendants engaged in illegal stops and searches. (ECF No. 31–1, 4). Therefore, they may reveal a pattern or practice of unlawful behavior that is relevant to determining whether defendants are liable for violating plaintiff's rights. *Id.* The documents, which involve defendants' veracity, could also be relevant to determining the truthfulness of prior statements and testimony. (ECF No. 31–1, 4–5). Finally, the documents may also demonstrate whether defendants were on notice of the illegality of such conduct which is relevant to determining punitive damages. (ECF No. 31–1, 4).

However, MSP is skeptical that "this request could lead to admissible evidence" and alleges that "[p]laintiff is trying to cast a wide net for information that is unlikely to help his case." (ECF No. 33–1, 10–11). *But see Paul S. Seres, Privilege Issues in Actions Against Police Officers,* 381 PLI/Lit 247, Sept. 1, 1989 at 286 (stating that "[a]lthough it is proper to avoid fishing expeditions in meritless actions, plaintiff might need the requested discovery to demonstrate the strength of his case." (internal quotations omitted)). Additionally, MSP argues that because these are unsustained complaints, they should not be discoverable. (ECF No. 33–1, 8). The police did not simply fail to find sufficient evidence to substantiate the complaint, but MSP actually found that "the reported incident did not occur." (ECF No. 33–1, 3). MSP also notes that Maryland law allows for the expungement of "unfounded" complaints, such as sought here (ECF No. 33–1, 8–9), suggesting at least the legislative view of the immateriality of such evidence.

Despite the characterization of the complaints as unsustained, this factor supports plaintiff's position. Discovery of the past complaints, which may demonstrate previous improper behavior and may impugn the veracity of the defendants, could be "reasonably calculated to lead to admissible evidence." *King,* 121 F.R.D. at 194. Specifically, evidence of specific instances involving the veracity of defendants could be admit-

ted in court if they are probative of untruthfulness according to FED.R.EVID. 608(b).[5] Notably, the plaintiff in *King* did not differentiate between unsustained and sustained complaints, but sought (and received) "records of *any* complaints against the officers and of *any* disciplinary actions or internal investigations brought by the police department against the officers." *King,* 121 F.R.D. at 186 (emphasis added). Thus, *King* does not support defendants on this point.

Moreover, other federal cases support the proposition that unsustained complaints should be discoverable as long as they are relevant to the cause of action. *See Frails v. City of New York,* 236 F.R.D. 116, 117 (E.D.N.Y.2006) (holding that "[d]isciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable."); *Wilson v. Hill,* No. 2:08–CV–552, 2010 WL 5014486, at *4 (S.D.Ohio 2010) (finding that "unsubstantiated allegations of other instances of excessive use of force . . . could lead to the discovery of admissible evidence."); *Pacheco v. City of New York,* 234 F.R.D. 53, 55 (E.D.N.Y.2006) (supporting discovery of unsustained allegations because "the plaintiff should be given an opportunity to seek out the witnesses to the other allegations of misconduct and produce them at trial if they have evidence that would tend to prove the defendants' intent."); *Session v. Rodriguez,* No. 3:03cv943 (AWT), 2008 WL 2338123, at *2 (D.Conn. June 4, 2008) (noting that "[i]t is 'the prevailing practice' of courts in the Second Circuit 'to limit discovery of a defendant's disciplinary history to complaints, whether substantiated or not, about conduct similar to the conduct alleged in the complaint.'" (internal citation omitted)); *Gibbs v. City of New York,* 243 F.R.D. 95, 96 (S.D.N.Y.2007) (stating that while an argument may be made that the unsustained allegations are not admissible in court, "[t]hat the prejudicial effect of unsubstantiat-

---

5. *See* FED.R.EVID. 608(b): ". . . [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.

But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."

ed complaints might outweigh their probative value is something to be addressed when considering their admissibility as evidence, not their discoverability."). *But see Calhoun v. Chi.*, 273 F.R.D. 421, 423–24 (N.D.Ill.2011) (finding that unsustained complaints are not discoverable); *Minor v. New Orleans*, CIV. A. No. 89–660, 1990 WL 72260, at *1 (E.D.La. May 22, 1990) (stating that "the unsubstantiated claims have little or no value . . . .").

The Court acknowledges that this Court in *Bellamy–Bey* found that "unsustained claims are irrelevant" as they "do little to demonstrate officer misconduct." 237 F.R.D. at 393. This judge respectfully disagrees with this conclusion and notes that Judge Legg did not have the benefit of the several cases cited above. Moreover, in contrast to *Bellamy–Bey*, where the police found that there was not sufficient evidence to continue to investigate two of the unsustained claims and the complainants did not follow through in three other unsustained claims, the police in this case followed through with an investigation. A completed investigation of complaints necessarily will provide more detailed factual information than complaints where little or no investigation was conducted. Lastly, while the undersigned judge respects the ruling of her colleague in *Bellamy–Bey*, it does not control the outcome of the analysis here, as a matter of law or fact.

The sharp relevance of these documents to the complained-of police conduct here compels their production under *King* and its progeny. This body of case law provides a strong judicial consensus that unsustained complaints, such as those at issue here, should be discoverable, if the request is limited to factually similar complaints.

### ● The Importance of the Documents to the Plaintiff's Case

The second factor is the importance of the documents to plaintiff's case. *According to King*, "[t]he court must consider the plaintiff's need for the information, including the availability of the information from alternative sources." *King*, 121 F.R.D. at 194. The arguments for this factor are mostly subsumed by the arguments for the above fac-

tor. Additionally, plaintiff correctly asserts—and MSP does not deny—that the information is unavailable from any source other than the MSP. (ECF No. 31–1, 5). Therefore, this factor supports plaintiff's motion to compel.

### ● The Strength of the Plaintiff's Case

The third factor is the strength of the plaintiff's case. While "court[s] should avoid permitting frivolous discovery . . . courts should tread lightly" on this rationale. *King*, 121 F.R.D. at 195. When there is uncertainty, "[d]oubts must be resolved . . . in favor of the claimant." *Id.* (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 666 (N.D.Cal. 1987)). As stated in *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 225 (S.D.N.Y. 1987), "the overriding policy is one of disclosure of relevant information in the interest of promoting the search for the truth in a federal question case." MSP correctly notes that "[t]his Court has already granted defendants summary judgment on seven counts of plaintiff's Complaint." (ECF No. 33–1, 11). However, those counts related to claims of abuse of process and malicious prosecution and necessarily involve different facts and different governing law. The Court denied defendants' motion as to the counts alleging constitutional violations in the stops and searches. However, the facts and legal analysis of the counts involving the stops/searches and the prosecution are distinctly different. Thus, the Court's grant of summary judgment on these "prosecution" counts does not in and of itself cast doubt on the viability of the "stop/search" counts. While Judge Quarles dismissed the counts related to the prosecution of plaintiff, (ECF No. 37, 9), the Court found that the claims on the stops/searches involved genuine disputes as to material fact (counts 1, 2, 5 and 6) (ECF No. 18, 31 and 37), or plaintiff presented enough evidence to survive summary judgment (counts 3 and 4) (ECF No. 18, 36–7).

The Court in *King* warns of denying discovery prematurely as "the plaintiff may not be able to demonstrate the strength of his or her case without the requested materials themselves." *King*, 121 F.R.D. at 195. This

judge is unable to assess the strength of the remaining counts. A review of Judge Quarles' opinion suggests his view of some weakness in at least plaintiff's equal protection claim. "The evidence in *Marshall* was close; the evidence here is closer. Martin has not offered evidence that Sgt. Conner explicitly accused him of criminal activity based on racial stereotypes, blatantly checking Martin's race before deciding to pull him over, changed his story of the events leading to the stop, or had an 'extensive' disciplinary record that included termination for misconduct." (ECF No. 18, 36). It is, of course, risky to draw too much from the language in an opinion especially one, based on the record prior to discovery. However, at this point, these counts survived initial motions and the requested documents are relevant to those remaining counts. Accordingly, this factor is neutral, or slightly favors plaintiff.

### ● Importance to the Public Interest

The fourth and final factor is the importance to the public interest. According to Judge Weinstein, "[t]he interest that without doubt looms largest in these cases is the public interest in giving force to the federal civil rights laws." *King*, 121 F.R.D. at 195. Judge Weinstein also notes that "[t]he great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery . . ." which requires that "the defendants' case for restricted disclosure must be extremely persuasive." *Id.* Plaintiff argues that "[t]he public has an interest in knowing whether the police engaged in unconstitutional or otherwise unlawful behavior." (ECF No. 31–1, 6). MSP provides no rebuttal on this point. The simple fact that this lawsuit pertains to a § 1983 action leads this factor to favor plaintiff.

### *King* Factors That Disfavor Disclosure:

### ● The Threat to a Police Officer's Own Safety as a Result of Disclosure

The first factor among those disfavoring disclosure is the threat to a police officer's own safety as a result of disclosure. The court in *King* noted that "[i]t may be prudent for the court to redact information . . . if a real and credible danger is posed by disclosure." 121 F.R.D. at 191. Plaintiff does not oppose redactions of the personal identifying information of defendants. (ECF No. 31–1, 7). MSP provides no argument that such redaction is insufficient. Any potential threats to a police officer's safety can be mitigated by redaction of any personal identifying information of the officer such as their home address, phone number, email address, etc. Therefore, this factor favors plaintiff.

### ● Invasion of a Police Officer's Privacy

The second factor is the invasion of a police officer's privacy. However, the court in *King* found that "[t]he privacy interest in this kind of professional record is not substantial, because it is not the kind of "highly personal" information warranting constitutional safeguard." 121 F.R.D. at 191. Plaintiff points out that "[t]he subpoenaed records contain information pertaining to actions defendants took in their official capacity as state troopers" and that "[t]hey do not contain personal information unrelated to their professional duties." (ECF No. 31–1, 7). MSP argues that a preeminent rationale of Maryland laws protecting police records from disclosure is "to preserve the privacy of personal information about a public employee that is accumulated during his or her employment." (ECF No. 33–1, 7) (citing 65 Opinions of the Attorney General 365, 367 (1980)). MSP also argues that the "complaints should remain confidential so that a police officer does not need to worry about his or her reputation being damaged as a result of frivolous complaints being disclosed." (ECF No. 33–1, 8).

This factor favors plaintiff as the invasion of a police officer's privacy as a result of disclosure of the prior complaints is minimal. This Court recognizes and greatly admires the extraordinary contributions of police officers to public safety. However, police officers vested with great power must necessarily sacrifice some of their privacy regarding the exercise of that great power when they choose to pursue a career as a law enforcement officer accountable to the public. Judge Weinstein in *King* emphasized that "[t]he privacy interest in nondisclosure of professional records should be especially lim-

ited in view of the role played by the police officer as a public servant who must be accountable to public review." *King,* 121 F.R.D. at 191. Plaintiff correctly notes that these files "do not contain personal information unrelated to their professional duties." (ECF No. 31–1, 7). Without revelation of any private information about the police officers, it is difficult to see how disclosure of the sought-after information would violate their personal privacy interest. While there may have been different considerations if the sought-after information included information on the police officers' physical and mental health evaluations, the information sought by plaintiff relates to the police officers' on-duty activities.

Moreover, the potential invasion of the police officers' privacy can be diminished by releasing the records under a protective order. *See King,* 121 F.R.D. at 190 (A protective "order can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement."). If the documents are submitted to plaintiff with redactions and under a protective order, concern about officers' privacy is adequately ameliorated. This factor favors plaintiff.

- **Weakening of Law Enforcement Programs**

The third factor is the weakening of law enforcement programs. To make a claim that discovery would harm a law enforcement program, police are "required to set forth in competent declarations the specific programs at risk, their value to law enforcement and the extent of harm projected to be caused by disclosure." *King,* 121 F.R.D. at 192. Plaintiff denies that "disclosure would reveal confidential law enforcement tactics and thereby compromise law enforcement investigations." (ECF No. 31–1, 8). MSP makes no argument to the contrary. With no evidence of the potential weakening law enforcement programs, this factor favors plaintiff.

- **Chilling of Police Candor During Internal Investigations**

The fourth factor is the potential chilling of police candor during internal investigations. However, the court in *King* warns that "[t]his argument is probably often overstated, and courts should be wary of relying on it in restricting discovery." *King,* 121 F.R.D. at 192. Incentives for truthfulness "are probably much more closely tied to the internal investigative machinery than to the fear of civil rights litigation." *Id.* Plaintiff states that "[f]or the reasons articulated in *King,* there is little concern that disclosure of the records at issue will adversely affect the MSP's ability to secure candid statements from other officers in future internal affairs investigations." (ECF No. 31–1, 8). However, MSP quotes the Maryland Court of Appeals in *Montgomery County Maryland v. Shropshire,* 420 Md. 362, 380–81, 23 A.3d 205 (2011) that there is a "significant public interest in preserving the confidentiality of internal police investigations both in promoting cooperation by civilian witnesses and police officers." Ultimately, of course, "[q]uestions of privilege in federal civil rights cases are governed by federal law." 121 F.R.D. at 187. However, this Court does not disagree with the *Shropshire* sentiment and acknowledges that *Shropshire* was factually similar in that records were sought to prove allegations of police misconduct, albeit not in a civil rights case.[6] But this Court disagrees with the *Shropshire* conclusion in this case. While there is a "significant public interest . . . in confidentiality . . . [to] promot[e] cooperation by civilian witnesses and police officers," there is also a countervailing "significant public interest" in transparency of government and accountability of public servants and the unimpeded search for the truth, especially where abuses of police power are alleged. While the Court of Appeals suggests that disclosure of these relevant docu-

---

**6.** *Shropshire* involves the Montgomery County Inspector General's (IG) request of records after initiating an investigation into police officers' conduct during a car accident involving the Montgomery County assistant fire chief. 420 Md. at 366, 23 A.3d 205. The current case involves a § 1983 action which alleges improper actions by police officers. In both the IG investigation and the § 1983 action, the parties seeking the confidential records seek to expose alleged police wrongdoing. The former instance involved the alleged preferential treatment by police officers of an assistant fire chief while the latter instance involved alleged racial profiling.

ments may lead to the potential chilling of police candor during internal investigations, no evidence is provided for this proposition. Judge Weinstein espouses a different view again, without specific evidence but counsels against reliance on this factor. This judge agrees with Judge Weinstein's view in this case. Reasonable judges may reach different conclusions in balancing competing public interests. But, at bottom, the party urging non-disclosure must persuade. MSP has not. Accordingly, this factor favors disclosure of the documents to plaintiff.

- **Chilling of Citizen Candor During Internal Investigations**

The fifth factor is the potential effect of the chilling of citizen candor during internal investigations. However, Judge Weinstein in *King* notes that "[i]t is not at all clear that people who feel aggrieved by actions of police officers would even think about the possibility that their complaints might be disclosed to another person who feels aggrieved by police officers." 121 F.R.D. at 193–94. Plaintiff endorses Judge Weinstein's observation and further argues that "it is more likely that citizens will approve of the disclosure in the hopes it would help others who have been similarly wronged." (ECF No. 31–1, 8). In response, MSP repeats its belief that confidentiality is in the public interest in encouraging candor. No evidence is provided to support either party's point of view, but that failure is more critical for MSP as it seeks to withhold otherwise discoverable information. Accordingly, this factor also favors plaintiff.

- **The State's Privacy Laws**

The sixth and final factor to be considered is the state's privacy laws. The holding underlying *King* was that "[s]imple direct application of the state rule would be undesirable and improper." 121 F.R.D. at 187. Instead, "the court should consider the policies underlying the state law and weigh those policies just as any other factors disfavoring disclosure...." *King*, 121 F.R.D. at 194. Plaintiff cites to *Md. Dep't of State Police v. Md.*

*State Conf. of NAACP Branches*, 190 Md. App. 359, 368, 988 A.2d 1075 (2010), *cert. granted sub nom. Md. State Police v. NAACP Branches*, 415 Md. 38, 997 A.2d 789 (2010), that investigative files of racial profiling complaints are discoverable as they "do not involve private matters concerning the intimate details of the trooper's private life." (ECF No. 31–1, 9). However, the Maryland Court of Appeals in *Shropshire* noted that the documents in *NAACP Branches* were discloseable as they were "statistics compiled regarding the acts of a group of officers without identification of their personal information" rather than records pertaining to a specific officer. 420 Md. at 382–383, 23 A.3d 205. MSP uses *Shropshire* and other cases to argue that Maryland law clearly supports the exclusion of discovery of unsustained complaints. *See Shropshire*, 420 Md. at 381, 23 A.3d 205 (finding that "internal affairs records ... are indeed 'personnel records' exempt from disclosure pursuant to Section 10–616(i) of the State Government Article."); *Colkley v. State*, 204 Md.App. 593, 629–630, 42 A.3d 646 (2012) (holding that the trial judge did not err by refusing discovery of unsustained police complaints).

While the standard for admissibility is, of course, a higher standard than for discoverability, MSP also notes Maryland state law prohibits the use of unsustained complaints in judicial proceedings.[7] Md.Code Ann.— Pub. Safety § 3–110(B). Additionally, as MSP points out, the Law Enforcement Officers' Bill of Rights provides defendants with the right to expunge unsustained complaints from their records after three years. (ECF No. 33–1, 8–9); Md.Code Ann.—Pub. Safety § 3–110. Therefore, while the unsustained complaints in the case at hand were not expunged, they were still expungeable, suggesting at least a strong legislative view that such records lack relevance, at least after three years.

This factor strongly favors defendants. MSP has provided common and statutory law demonstrating that Maryland public policy

---

**7.** "Evidence of a formal complaint against a law enforcement officer is not admissible in an administrative or judicial proceeding if the complaint resulted in an outcome listed in subsection (a)(1) of this section." Md.Code Ann.—Pub. Safety § 3–110(b). Subsection (a)(1) includes "unfounded" charges. Md.Code Ann.—Pub. Safety § 3–110(a).

disfavors use of internal affairs records and specifically, unsustained police complaints. As noted by defendants, " '[m]istaken or even deliberately false reports and accusations are made against members of the department' and that '[i]n some instances, the most conscientious and hardworking members will be subject to such reports.' " (ECF No. 33–1, 6) (citing *Shropshire*, 420 Md. at 380–81, 23 A.3d 205). Accordingly, the "complaints should remain confidential so that a police officer does not need to worry about his or her reputation being damaged as a result of frivolous complaints." (ECF No. 33–1. 8).

Despite disfavor of the production of confidential records in Maryland, there is notably no absolute bar against disclosure under Maryland law. *See Blades v. Woods*, 107 Md.App. 178, 185–186, 667 A.2d 917 (1995)(providing a balancing test to determine the discoverability of confidential police records); *Baltimore City Dept. of Social Services v. Stein*, 328 Md. 1, 27, 612 A.2d 880 (1992) (equating the " 'need to inspect' with relevance and the existence of 'a reasonable possibility that review of the records would result in discovery of usable evidence' in determining the discoverability of confidential records.") (citing *Zaal v. State*, 326 Md. 54, 81, 602 A.2d 1247 (1992)); *Robinson v. State*, 354 Md. 287, 309, 730 A.2d 181 (1999) (declaring that "[w]hile confidentiality does go to discoverability, it does not guarantee insulation of the confidential matter from disclosure."). Thus, Maryland's privacy laws strongly disfavor production; though the courts nonetheless recognize production is appropriate in some circumstances.

As stated in *King*, "[s]imple direct application of the state rule would be undesirable and improper." 121 F.R.D. at 187. This is why "the magistrate [judge] must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation." *Id.* This balancing compels production of the sought records here. Eight of the ten *King* factors favor plaintiff. The only factor that favors MSP is Maryland's privacy laws; the factor regarding the strength of plaintiff's case is neutral, or slightly favors plaintiff. MSP's argument that discovery of these documents would be harmful, even if the documents were redacted and sealed under a protective order, is unpersuasive. The unsustained complaints against Maryland State Trooper Christopher Conner and former Maryland State Trooper Jeremiah Gussoni shall be produced to plaintiff, with appropriate redactions, under a protective order that limits the documents' release to plaintiff and his attorney. Appropriate redactions include the address, phone number, email, and other identifying information of defendants Gussoni and Conner as well as the names and identifying information of non-defendant police officers.

## III. Conclusion

For the reasons set forth above, MSP shall produce the records by **November 28, 2012,** under protective order directed herein.